FILED
2017 Apr-25 AM 09:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **TERRI BYROM,** )<br>)<br>  **Plaintiff,** )<br>)<br>v. )<br>)<br>**METROPOLITAN LIFE** )<br>**INSURANCE COMPANY,** )<br>)<br>  **Defendant.** ) | **CIVIL ACTION NO.**<br>_____ |

## COMPLAINT

Plaintiff Terri Byrom ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Metropolitan Life Insurance Company ("MetLife") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Arrow Electronics, Inc. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

### INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to

1

as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a), in order to secure disability benefits due to Plaintiff through group insurance policies obtained by the Arrow Electronics, Inc. LTD Plan ("The Plan") for purposes of funding certain benefits this Plan creates.

2. The Plaintiff seeks any and all benefits to which she may be entitled should this Court determine she is "disabled," including long-term disability benefits; waiver of premium benefits under disability, life, accidental death and dismemberment or accident policies issued or administered by MetLife; and any other benefits available through the Plan, including those managed, administered or underwritten by MetLife.

3. Plaintiff seeks benefits based on the conditions documented in her medical records arising from her multiple sclerosis ("MS").

4. Due to her MS, Plaintiff requires frequent rest periods throughout the day and she must avoid stressful environments. Her condition prevents her from being able to work on a fulltime basis because, among other things, her exhaustion worsens as the day progresses without relation to the amount of activity she has performed.

5. Plaintiff is precluded from working also because of her inability to maintain concentration, pace and persistence. In other words, in addition to the

physical impact of her conditions such as pain, weakness and vision problems, she also suffers from diminished cognitive capacity.

## JURISDICTION

6.      Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

7.      Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District, the breaches of duty alleged herein occurred in this District, and all Defendant may be found or reside in this District and, pursuant to 28 U.S.C. § 1391(b), in that the cause of action arose in this District.

## PARTIES

8.      Plaintiff Terri Byrom is a resident citizen of Alabama residing in this district.

9.      Defendant Metropolitan Life Insurance Company is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

10.     MetLife is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

11. MetLife's designated agent for service of process is:

CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

12. MetLife is an entity exercising authority or control respecting the management or disposition of The Plan assets or the personnel exercising said authority over The Plan assets.

13. MetLife is an entity providing services to The Plan at issue.

14. MetLife is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

15. Upon information and belief, The Plan at issue was funded, at least in part, by a long-term disability insurance policy sold by MetLife, the company which also underwrote the policy.

16. The long-term disability policy was purchased by Plaintiff's employer and/or the Plan to confer a benefit upon Plaintiff and other employees.

17. This policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under The Plan as that term is used in 29 U.S.C. § 1132.

18. Under the terms of The Plan providing for disability benefits, Plaintiff is "disabled" as defined by The Plan.

19. There are no Plan documents indicating that MetLife has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred. Any such clause found in the Plan is void under Colorado law, which the Plan expressly adopts and incorporates

## METLIFE'S LIABILITY

20. Before becoming disabled, Plaintiff worked for Arrow Electronics, Inc.

21. In her line of work, she was responsible for preparing inventory and other kinds of product reports, managing inventory and inventory schedules, shipping reports, and logistics.

22. Important aspects of her job included her being able to communicate with others effectively and coherently, to distill information effectively, to engage in critical thinking and computer skills.

23. Plaintiff excelled at this job prior to her disability.

24. Things began to change in 2009 as Plaintiff developed increasingly significant problems resulting from MS. Specifically, around that time she began to develop chest pains related directly to her MS and vision problems, together with other MS symptoms.

25. She applied for and, upon being found disabled, received short-term disability benefits under Arrow's Short-Term Disability Plan. Although MetLife

inaccurately characterized her issues as heart-related instead of being related to her MS, she continued to receive these benefits through the end of their term.

26. When her STD benefits were paid in full, her claim transitioned into LTD where it's administration should have immediately begun. Due to administrative error, however, it did not, even after Plaintiff continuously followed up with MetLife about LTD at regular intervals via telephone.

27. In the meantime, Plaintiff, now being without income, was unable to continue seeking care from doctors and specialists. She was also unable to get the medications she needed to keep her MS at bay. Instead, she had to settle for medication that solely was intended to address her consistent pain, this being the only thing she could afford at the time.

28. Eventually MetLife admitted its administrative mistake and finally began processing Plaintiff's claim.

29. MetLife denied Plaintiff's LTD claim based upon an erroneous conclusion that Plaintiff's MS was not sufficiently disabling on its own since April 2009 (when Plaintiff's disability arose). Instead, MetLife found Plaintiff's MS to be disabling only from July 8, 2013 through the present date.

30. Plaintiff timely appealed MetLife's denial, but MetLife upheld the decision on all grounds.

31. In the meantime, Plaintiff applied for Social Security disability as required by MetLife. The SSA found Plaintiff to be disabled, or in other words, unable to work in gainful employment within the national economy.

32. The documents provided by MetLife since the denial establish numerous breaches and errors committed by MetLife during the course of administering Plaintiff's claim, including:

    (a) The targeting of Plaintiff's claim for denial because ERISA governs;

    (b) Failing to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

    (c) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of her claim;

    (d) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

    (e) Failing to accord any weight to Plaintiff's medical providers who personally examined the Plaintiff on a regular basis;

    (f)    Purposefully limiting and curtailing the review of its medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

    (g)    Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff or allowing any of them the opportunity to "peer review" MetLife's medical consultants (essentially conducting a one-way medical review process); and

    (h)    Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how her conditions impacted one another.

33.    Despite Plaintiff's established disability and entitlement to coverage under the terms of the Plan, MetLife determined that Plaintiff was not "disabled" and that she no longer qualified for benefits.

34.    As set forth above in connection with MetLife's fiduciary breaches, MetLife's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

35.    This conflict of interest further calls into question the credibility of MetLife's claims personnel and reviewers.

36. MetLife considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision, and to excuse the Plaintiff from further utilization of MetLife's claim process.

37. MetLife did not provide Plaintiff with a meaningful opportunity for a full and fair review of her claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

38. MetLife's decision process has not comported with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations.

39. MetLife is not entitled to deferential review for the additional reason that this Plan and all its terms are governed by Colorado law which prohibits discretionary clauses in policies such as the one insuring the Arrow Electronics, Inc. benefits at issue here. See Colo. Rev. Stat. Ann. § 10-3-1116.

40. Plaintiff has exhausted all Plan remedies even though MetLife's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Terri Byrom respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant her the following relief:

a. Award Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan pursuant to 29 U.S.C. § 1132(a);

b. Reinstate her group life insurance through enforcement of her waiver-of-premium benefit which was also wrongfully terminated;

b. Enter a declaratory judgment as to Plaintiff's entitlement to future benefits and an appropriate order directing the Defendant to pay all similar claims of Plaintiff in the future pursuant to 29 U.S.C. § 1132(a);

c. Should the Defendant voluntarily pay all past due benefits, enter a declaratory judgment as to Plaintiff's entitlement to future benefits, along with entering an appropriate order directing the Defendant to pay similar claims to Plaintiff in the future, or in the alternative, for the Court to remove MetLife from its fiduciary role in the administration of The Plan(s), and to appoint a special master at RSL's expense to substitute for this Defendant with the special master having the authority to make all determinations as to Plaintiff's entitlement to future benefits;

d. For a judgment against the Defendant awarding Plaintiff prejudgment interest, costs and expenses, including the reasonable attorney's fee as permitted under 29 U.S.C. § 1132(g)(1);

e. For an order enjoining the Defendant from further breaches of fiduciary or co-fiduciary duties, and direct that Defendant exercise reasonable care, skill, prudence, and diligence in the administration of Plaintiff's claim;

f. For an order requiring Defendant to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

g. Such other relief as may be deemed just and proper.

Respectfully submitted,

/s/ M. Clayborn Williams
M. Clayborn Williams
(ASB-9101-A43M)

/s/ David P. Martin
David P. Martin
(ASB-3500-M68D)

**The Martin Law Group, LLC**
**Attorney for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com
david@erisacase.com

**Plaintiff's Address:**

Terri Byrom
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**

Metropolitan Life Insurance Company
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104